New Jersey Department of Labor,
Workmen's Compensation Bureau.

MARY MORAN, PETITIONER. v. ANNA McKIM,
RESPONDENT.

Decided May 15, 1940.

For the petitioner, *Quinn & Doremus* (*Vincent J. McCue*).

For the respondent, *Cox & Walburg*.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

The determined facts in this case establish that the petitioner's decedent, James Moran, was in the employ of respondent on May 1st, 1939, as a chauffeur at her residence in Middletown Township, New Jersey, apparently used as a summer residence by respondent. On the day in question the home was being opened for the summer season and the family arrived on that day for that purpose. It was necessary for the petitioner to go to the station and bring the employer and various servants to the home and thereafter to put away in an upstairs storeroom, with the assistance of a fellow workman, certain trunks. There is testimony to the effect that in the process of taking these trunks up the stairway petitioner asked his helper to let the trunk down for a minute in order that he might get his breath. This was about two-thirty P. M. He then apparently continued about his regular duties and arrived home at six P. M. that evening, ate a light supper and shortly thereafter suffered a heart attack. A doctor was summoned and gave him stimulants. Petitioner

after remaining in bed for three days and recovering to some extent got up and walked around. He then suffered another attack and was sent by the doctor to the hospital where he remained about three weeks. He was then returned home where he remained several days and then suffered a third attack being then sent to the hospital for the second time. He again made some measure of recovery and was allowed to return home, remaining there again for three or four days when he suffered another attack and was sent to the hospital for the third time where he remained until his death on September 14th, 1939. The medical witnesses are agreed that the cause of his death was hypertensive cardio vascular disease based on luetic aortitis. The evidence discloses that this condition was of long standing and in fact it appears that petitioner's physical condition was very bad and he had been warned by his physician to refrain from all hard work as the least exertion might have fatal results. There was testimony to the effect that he had suffered a previous attack in November of the previous year and also in March of 1939.

Deceased's treating physician and experts called by petitioner testified that the exertion incident to the carrying of the trunks up the stairway, in view of deceased's pausing to rest while doing so, would have been the precipitating cause of his subsequent collapse, although experts on behalf of respondent gave it as their opinion that this incident was not a competent contributing cause of his collapse and death as there should have been immediate symptoms of cardiac distress which they say are not shown by the facts.

Counsel for petitioner urging that the proofs sustain her claim stresses the trunk incident as evidence that petitioner's decedent suffered injury by accident arising out of and in course of his employment resulting in his subsequent death. Respondent's counsel on the other hand maintains that this incident does not support such a finding because of the lack of immediate symptoms and collapse.

However, it seems to me that both counsel miss the significance of the testimony of the witness, David George, a fellow employe of deceased, and the person who assisted him in carrying the trunks up the stairway, to the effect that the

family and servants had that day arrived to open the home for the season and that it was necessary for deceased to drive to the station to meet and bring them to the residence and to assist in the attendant activities of preparing the residence for the seasonal opening thereof. The picture thus presented is one of unusual activity about the premises on the day in question of which the trunk incident was only one, but perhaps an outstanding one as evidencing that the deceased was on the day in question under unusual strain and the request for pause in execution of this task points to beginning collapse, not only from that incident itself but from the strain of the other activities of the day as well superimposed thereon.

Again in regards to respondent's contention that the collapse should be immediate if caused by the trunk incident we should note that apparently decedent was a man of unusual reserve as indicated by his recovery from previous heart attacks and the further fact that even after the final collapse he did not die until four and one-half months later and after several partial recoveries therefrom. Dr. Meehan's testimony on this point seems pertinent wherein he stated that the collapse need not be immediate but would depend to a great extent upon the individual's reserve powers.

The law places the burden of proof on the petitioner for compensation; and it is not sustained unless the evidence preponderates in favor of the tendered hypothesis. That must be a rational inference, i. e., based upon a preponderance of probabilities according to the common experience of mankind. It is required to be a probable or more probable hypothesis with reference to the possibility of other hypotheses. *Gilbert* v. *Gilbert Machine Works, Inc.,* 122 *N. J. L.* 533; 6 *Atl. Rep.* (*2d*) 213. In my opinion petitioner has sustained this burden.

The Court of Errors and Appeals in the case of *Bollinger* v. *Wagaraw Building Supply Co.,* 122 *N. J. L.* 512; 6 *Atl. Rep.* (*2d*) 396, states, "We think that the requirement that the injury or death arises by accident under our statute, is satisfied if the claimant discharges the burden of proving that the condition complained, i. e., the injury or death, is related

to or affected by the employment, that is to say, if but for the employment it would not have occurred."

I do therefore find and determine that the decedent James Moran, met his death as the result of injuries incurred in an accident arising out of and in course of his employment with respondent on May 1st, 1939, his death occurring on September 14th, 1939.

\*          \*          \*          \*          \*          \*          \*

HARRY H. UMBERGER,
Deputy Commissioner.